By the Court.
The plaintiff in error and John G. Owens were jointly indicted-by the grand *30 jury of Cuyahoga county on the charge of blackmail, under Section 13384, General Code. The substance of that section which pertains to the indictment is 'as follows:
“Whoever, with menaces, orally * * * demands of 'another * * * money * * * with intent to extort or gain from him * * * money * * * may be fined,” etc.
The -indictment, after the formal parts, sets out :
“In the name of and by the authority of the State of Ohio the Jurors of the Grand Jury do present and find that Charles B. Smith and John G. Owens, late of the county aforesaid, on or about the 1st day of December in the year of our Lord one thousand nine hundred and fifteen, with force and arms at the County aforesaid, with the following menaces, towit — by saying to one Frank A. Collins, then and there being: ‘You know you have got a great big job here and you are bound to 'have more or less labor trouble on it. We like you and we like the Gill company, but in order to go down the line for you, it is asking a whole lot of us. I think that Kerm Gill ought to give in and give us a nice little Christmas present. It is going to take a couple of years to build it and we have got to go to the mat for you fellows, and we figure Kerm Gill ought to give us some money. We are afraid there is going to 'be trouble around here. If Kerm Gill wants to be that kind of a cheap skate, he Can get out of this town. I want to tell you 'something, Frank, we are going to make this a regular town like New York and Chicago. We are letting you off mighty easy. We are only asking you-.two thousand dollars ($2,000.00). It *31 would have been a whole lot better for you to have had us along with you all through this big job than have us against you. We like you personally, Frank, but we are going to make Kerm Gill’s firm live hard from now on,’ did demand of the said Francis A. Collins and one Kermode F. Gill, money in the amount of two thousand dollars ($2,000.00) with intent to extort from them, the said Francis A. Collins and Kermode F. Gill, money in the amount of two thousand dollars ($2,000.00), contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.”
Both defendants pleaded “Not guilty” to the indictment. Thereafter the plea was withdrawn, and a motion to quash was filed, and overruled, and a demurrer to the indictment was filed and overruled. The accused thereupon renewed their pleas of “Not guilty.” Trial was had, resulting in the conviction of Smith and the acquittal of Owens.
Error is' prosecuted by Smith.
It is claimed by counsel for plaintiff in error that the indictment did not sufficiently set out any menace to extort money, because it fails to set out that plaintiff in error threatened Collins with an unlawful act.
If is not necessary that the threat or menace should be to do an unlawful act or unlawful thing. It is sufficient that the threat or menace be to injure one in his property or reputation, or to humiliate him so that he might be induced thereby to give money rather than be subjected to a charge that might have a tendency to affect him, or to *32 humiliate him, in his rights, his property or his reputation.
It is further urged that the indictment does not charge a conspiracy, and inasmuch as it is a joint indictment it is necessary to charge that they conspired to extort money by menace and threat.
It is held by the supreme court in Elliott v. The State, 36 Ohio St., 318, at page 324, that the crime “may be committed by one or more persons, and for 'which 'they may be jointly indicted without alleging a previous conspiracy.”
It was not therefore necessary to charge a conspiracy in order to have a joint indictment against Smith and Owens.
It is further urged that the testimony of one of these parties could not be used against the other. But the record discloses that whatever was said and done touching the matters set out in the indictment was done' or said by one or the other when they were ' both present, and therefore the evidence of a conspiracy was produced to the jury, and it was a question of whether or not that evidence established a conspiracy beyond a reasonable doubt. If it did, and the jury were the judges whether or not it did, then the testimony of one was admissible against the other, under the rule laid down in Ditzler v. The State of Ohio, 4 C. C., 551.
It is urged by plaintiff in error that the evidence 'was not sufficient to warrant the jury in returning a verdict against Smith in view of the fact that Owens was acquitted. It is urged that the -evidence in the record does not show that the''offense was proved against Smith beyond a reasonable *33 doubt, and that it is not conceivable that Smith could be convicted -and 'Owens acquitted on the same identical evidence.
Collins testified that Smith and Owens came to his office and demanded of him $2,000. Owens •was the spokesman, and this is the language that he used, as Collins testified:
“ ‘Frank, you have got a great big job here and you are bound -to have more or less labor trouble on it. We like you and we like the Gill company. We like Kerm Gill, but we are going to have to go down the line 'for you. It is getting near Christmas and we think Kerm Gill ought to kick in with a Christmas present for us. You know how it is. We have got to do a whole lot for you to get your work over. I think he ought to kick in with a Christmas present for us.’ I [Collins] said: ‘Well, I will take it up with Mr. Gill and see what he says,’ which I -did.”
Two or three days after, Owens and Smith again went to see Collins, and they had another talk with him. Collins testified that the following •occurred:
“I had gotten fifty dollars from Mr. Robinson of The Guardian Bank, which I brought to them, and Mr. Smith remarked, ‘Why,’ he says, ‘Jack and I spend more 'than that much every day,’ very contemptuously. I said, ‘Well, how much did you expect?’ He 'said, ‘Why, at least two thousand dollars.’ I said, T don’t know.’ I said, T didn’t think jmu wanted any amount like that.. I will see them again and see what he says,’ which I did.”
*34 Thereafter Collins testified that Smith and Owens again came to see him, in about a week, and this occurred between Collins and Smith and Owens:
“Q. Tell us what you said in that respect.
“A. I said they wouldn’t give .that much money. They thought fifty was all right. They wouldn’t give that much. That’s all there is to it. Mr. Smith said, ‘Well, if Kerm Gill is that sort of a cheap skate he can get the hell 'out of Cleveland. He can’t build in this .town.’
“Mr. Payer: Who said that?
“The Witness: Mr. Smith. He said, ‘Why, do you know how they settle jobs like this in New York and Chicago? They charge you one per cent, of the total contract. How much is your contract here?’ ‘Well,’ I 'said, ‘it will amount to about two and a half million.’ ‘Well,’ he says, ‘that is twenty-five thousand dollars, isn’t it?’ ‘Now,’ he says, T think we are letting you off mighty easy with two thousand dollars. If he wants to be a cheap skate he can get the hell out of Cleveland. He can’t build in this town.’ I said—
“Q. Did' he say anything else? What did you say?
“A. No, they started out then, and Mr. Smith further remarked, ‘Well, we will make you live hard, from now on, Frank.’ I immediately took up the remark and 'said, ‘Charley, haven’t I always been square with you?’ He said, ‘Yes, you have. We like you personally, but we are going to get Gill, and we are going to get him good.’
*35 “Q. Anything else?
“A. No, they left then.”
This is but a part of the evidence as to what took place between Smith and Owens, on the one hand, and Collins, on the other, but we think the evidence is sufficient to warrant the jury in finding that both Smith and Owens had endeavored to extort money from Collins, who was an employe of Gill, by threats and menaces.
But it is said that upon this evidence the jury should have found Owens guilty, as well as Smith, or, rather, having found Owens innocent they should also have returned a verdict of not guilty as to Smith.
It appears from the record that Owens took the witness stand on his own behalf and denied ever having uttered these statements attributed to him by Collins, and denied that lie had asked Collins ■for two thousand dollars or any other sum; whereas Smith failed to take the witness stand in his own behalf, failed to testify in the case, and failed to deny the testimony of Collins as to his utterances. Under such a state of facts the jury might well have concluded that the state had failed to establish the guilt of Owens beyond a reasonable •doubt; but, in the absence of any denial on the part of Smith, the evidence was sufficient to establish in the minds of the jury the guilt of Smith, beyond a reasonable doubt. This, we think, is sufficient to account for the fact that the jury returned a verdict of “guilty” against Smith and “not guilty” against Owens.
It is further claimed that the court erred in the admission of evidence of similar facts and circum *36 stances. There was a great mass of testimony-admitted, of instances in which Owens and Smith, or Smith alone, had received money from contractors and builders and owners of buildings in the city of Cleveland, covering a period of one or two years prior to the time of the indictment. Many of these cases were instances like those set out -in the indictment', -in which the contractor or owner of a building was threatened with disaster Or strikes, or trouble, unless money was paid. 'Other instances showed -that money was paid to avoid strikes (arid trouble, and in order to settle •strikes and labor trouble, and we think that on the whole the court did not err in admitting evidence of this character. The court charged the jury that the purpose of admitting this evidence was to show scienter, guilty knowledge or intent, arid that it could not be used for the purpose of establishing the guilt of the defendants upon the charge against them' in this case; that even though they had been guilty of all these former and subsequent offenses, nevertheless, unless the evidence established beyond a reasonable doubt that they were guilty of the offense charged ;in the indictment, it would be the duty of the jury to acquit them. In thus charging the jury we find that the court committed no error.
. A Careful consideration of the entire record in the case fails to disclose any error prejudicial to the plaintiff in error "which would warrant us in reversing this judgment of conviction. The plaintiff in error had a fair and impartial trial, ably defended by able counsel. The court’s rulings during the trial were fair, impartial and just; and his *37 ■charge to the jury, including the special charges, was fair and impartial, and substantial justice was done in this case.
The judgment of the court of common pleas is therefore affirmed.

Judgment affirmed.

Jones, Gorman and Hamilton, JJ., concur.
Judges of the First Appellate District, sitting in place of Judges Grant, Carpenter and Lieghley of the Eighth Appellate District.